**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **RICHARD PITTS, <u>et al.</u>,** |
| Plaintiff-Relators, |
| v. |
| **WELLS FARGO BANK, N.A., <u>et al.</u>,** |
| Defendants. |

Case No. 14-cv-02211 (CRC)

<u>**MEMORANDUM OPINION**</u>

This is one of a recent slew of cases filed in this Court by homeowners elsewhere in the country who stand to lose their homes to foreclosure after defaulting on their adjustable-rate mortgages. In a rambling, 42-page Complaint, Maryland homeowners Richard Pitts and Bruce McKoy seek to prevent Wells Fargo Bank and two law firms from foreclosing on their properties due to alleged violations of federal disclosure requirements and Maryland common law. For the reasons explained below, the Court will grant Defendants' motion to dismiss the Complaint.

## I.      Background

Richard Pitts owns real property with his wife in Capitol Heights, Maryland. Bruce McKoy owns real property in Landover, Maryland. Both have been parties to lawsuits in Maryland state court concerning foreclosure of their properties. In 2012, Pitts brought a quiet title action against Wells Fargo in the Circuit Court for the County of Prince George's, Maryland. That case was dismissed, and Pitts's appeal was denied. Pitts also filed counterclaims against Wells Fargo in a subsequent foreclosure proceeding, which were also dismissed. In 2014, a foreclosure proceeding brought against McKoy was stayed following his bankruptcy filing, but that case is now proceeding toward a foreclosure auction.

Pitts and McKoy, proceeding *pro se*, now bring a four-count Complaint in this Court, seeking an injunction against foreclosure of their properties and an award of damages. They name as defendants Wells Fargo—which they identify as the servicer of their mortgages—and two law firms that acted as trustees in the foreclosure proceedings. In Count I, they allege that the originators of their loans (who are *not* named as Defendants) violated the Truth in Lending Act ("TILA") by failing to make proper disclosures, misrepresenting the finance charges and interest rates associated with the loans, and not verifying their ability to repay the loans. They also claim that Wells Fargo has violated TILA by failing to disclose the identities of the current note holders. In Counts II and III, Plaintiffs bring state law claims for breach of fiduciary duty and fraud, respectively. They allege that the loan originators breached their fiduciary duties to them by failing to procure their mortgages on the best terms available, and that they committed fraud by knowingly making false and misleading representations of fact in order to induce them to take out the loans. Elsewhere in their submissions, Plaintiffs assert breach of fiduciary duty and fraud claims against Wells Fargo based on the bank's alleged failure to disclose the identities of the current note holders. In Count IV, Pitts and McKoy seek to enforce a consent judgment entered into between several banks, including Wells Fargo, and the federal government in a prior case in this district. See Consent Judgment, ECF No. 14, United States v. Bank of Am. Corp., No. 12-361 (D.D.C. Apr. 4, 2012) ("Consent Judgment"). They allege that the Consent Judgment prevents Wells Fargo from foreclosing on their properties. Finally, in their prayer for relief, Plaintiffs present a claim of intentional infliction of emotional distress against the two law firms, which, presumably, represented Wells Fargo in the foreclosure proceedings, alleging that they knew or should have known that their client bank does not have standing to foreclose on

their properties.  Plaintiffs also seek to bring their claims as relators on behalf of the United States.

The Defendants have moved to dismiss all of Plaintiffs' claims, contending that: (1) Pitts and McKoy cannot bring a claim to enforce the Consent Judgment because they were not parties to the underlying action that resulted in the Judgment; (2) venue is improper in the District of Columbia because none of the Defendants is a citizen of this district and the alleged events giving rise to the claims occurred in Maryland; (3) the claims are barred by the applicable statutes of limitations; (4) the suit is foreclosed by prior Maryland state court judgments; and (5) the claims are otherwise unmeritorious.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a suit for improper venue.  "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Hunter v. Johanns, 517 F. Supp. 2d 340, 343 (D.D.C. 2007) (quoting Darby v. Dep't of Energy, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)) (internal quotation marks omitted).  The factual allegations put forward by a plaintiff proceeding *pro se* are held "to less stringent standards than formal pleadings drafted by lawyers." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 n.2 (D.C. Cir. 2000) (quotations omitted).  Indeed, the D.C. Circuit recently held that a district court erred by failing to consider a *pro se* plaintiff's allegations that were set forth in his opposition to a motion to dismiss. Brown v. Whole Foods Market Grp., 789 F.3d 146 (D.C. Cir. 2015) ("We have previously held that a district court errs in failing to consider a *pro se* litigant's

complaint 'in light of' all filings, including filings responsive to a motion to dismiss." (quoting Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999))).

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that fails to state a legally valid claim.  The complaint must contain facts "stat[ing] a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.   Analysis

### A.   Consent Judgment

In 2012, the federal government, 49 states, and the District of Columbia brought suit against Wells Fargo and a number of other financial institutions, alleging deceptive and illegal practices related to servicing mortgages and foreclosing on houses before and during the 2008 financial crisis.  Compl., ECF No. 1, Bank of Am., No. 12-cv-361.  The United States settled its claims against Wells Fargo with a consent judgment, which sets forth, among other things, a set of servicing standards with which the bank must comply in future foreclosure proceedings.  Consent Judgment, Ex. A.  Pitts and McKoy argue that the Consent Judgment establishes jurisdiction over their claims in this District.

They are mistaken.  A consent decree "is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it."  SEC v. Prudential Sec. Inc., 136 F.3d 153, 157 (D.C. Cir. 1998) (quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975)) (internal quotation mark omitted).  This rule applies with even greater force when the government is a party to the judgment.  See Beckett v.

Air Line Pilots Ass'n, 995 F.2d 280, 288 (D.C. Cir. 1993).  Because they were not parties to the

Consent Judgment and the Judgment does not explicitly permit third parties to enforce it, Pitts

and McKoy cannot bring a claim under the Consent Judgment.[1]  Accordingly, the Court will

dismiss Count IV.

> B.   Venue

Requiring that a case be brought in the proper district ensures that only courts with some

interest in the dispute or the parties adjudicate the claims at issue.  Venue is proper in the district

where (1) a defendant resides, if all defendants reside in the same state; (2) the events giving rise

to the suit occurred; or (3) if venue would not be proper in any district for those reasons,

wherever the defendants are subject to personal jurisdiction.  28 U.S.C. § 1391(b).  Although a

court may exercise pendant venue over claims related to a claim properly brought in that court, it

may not exercise pendant venue over a claim that has been dismissed.  Cameron v. Thornburgh,

983 F.2d 253, 257 (D.C. Cir. 1993).  Here, venue might arguably have been proper in this district

as to the claim based on the Consent Judgment, but, as explained above, that claim will be

dismissed.  The remaining claims all involve the mortgages on Plaintiffs' Maryland properties.

Pitts and McKoy do not allege that any of the Defendants are residents of, or that the events

surrounding their claims took place in, the District of Columbia.  And because the events giving

---

[1] Parroting an argument that numerous other plaintiffs have advanced in similar cases, Pitts and McKoy maintain that a 177-year-old Supreme Court case, Georgetown v. Canal Company, 37 U.S. 91 (1838), permits the Court to exercise its equitable jurisdiction to enforce a consent decree to prevent irreparable harm.  They rely on a passage from that case stating that "*in cases of public nuisance*, . . . [equity jurisdiction] may be exercised in those cases in which there is imminent danger of irreparable mischief, before the tardiness of the law could reach it."  Id. at 92 (emphasis added).  The doctrine of public nuisance has no application to this case.  Pitts and McKoy may not sue to enforce the Consent Judgment on their own behalf or as private attorneys general.

rise to their claims occurred in the District of Maryland, venue is proper in that district and therefore improper in this one under § 1391(b).

When venue is improper, the district court must dismiss the suit or, if it is in the interests of justice, transfer the case to a district in which the case could have been brought.  28 U.S.C. § 1406(a).  Dismissal, instead of transfer, is appropriate when the plaintiff's claims demonstrate significant substantive problems.  Simpkins v. District of Columbia, 108 F.3d 366, 371 (D.C. Cir. 1997).  Whether to dismiss or to transfer the case is committed to the sound discretion of the district court.  Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983).  The Court will first determine what claims may be barred by the doctrine of *res judicata* before determining whether the remaining claims should be dismissed or transferred to the District of Maryland.

> C.     Remaining Claims

> 1.     Res Judicata

*Res judicata* refers collectively to claim preclusion and issue preclusion.  Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)).  Issue preclusion, in addition to barring "successive litigation of an issue of fact or law actually litigated and resolved in a . . . prior judgment," id. (quoting New Hampshire, 532 U.S. at 748–49), prevents parties from raising claims that "could have been raised" in a prior action between the same parties or their privies, Allen v. McCurry, 449 U.S. 90, 94 (1980).

The Circuit Court for the County of Prince George's, Maryland, has already adjudicated multiple cases concerning Plaintiffs, their properties, and Defendants.  It dismissed Pitts's complaint against Wells Fargo to quiet title to his property, Defs.' Suppl. Mem. Ex. I, which

asserted that the bank has no right to enforce the promissory note or to foreclose pursuant to the deed of trust, id. Ex. F (Compl. ¶¶ 6, 7, 10, 13, 15), and it dismissed Pitts's counterclaims to the same effect when Wells Fargo attempted to foreclose, id. Ex. N (Aff. Def. ¶¶ 8, 14, 17; Counterclaim ¶¶ 9, 10); Ex. P.  In addition, Pitts had the opportunity in the foreclosure case— brought by Defendant Cohn, Goldberg & Deutsch, LLC as trustee for Wells Fargo—to raise any counterclaims against that law firm.  Defs.' Suppl. Mem. Ex. Q.  And McKoy could have brought counterclaims against Defendant Atlantic Law Group LLC in the foreclosure case brought by attorneys at that firm as trustee for the bank.  Id. Ex. R.  Because the Maryland court issued a final judgment on Pitts's claim that Wells Fargo had no interest in the promissory note or the deed of trust, claim preclusion bars relitigation of that claim here.  And because Pitts and McKoy could have raised claims against the law firms in those prior actions, issue preclusion prevents them from raising claims against those firms here.  The Court will therefore dismiss Counts I, II, and III to the extent they allege that Wells Fargo has no right to enforce the note or deed of trust, as well as, in their entirety, the claims against both law firms.

### 2.   TILA Claims

Pitts and McKoy allege three separate TILA violations.  They claim that (1) the loan originators understated the finance charges and interest rates, a violation of 15 U.S.C. § 1632, Compl. ¶ 19; (2) the loan originators failed to verify Plaintiffs' ability to repay the loans under 15 U.S.C. § 1639c, Compl ¶ 55; and (3) Wells Fargo has failed to disclose the identities of the current note holders as required under 15 U.S.C. § 1641(g), Compl. ¶¶ 11, 37.  The statute of limitations for most TILA violations is one year, though it is three years for violations of § 1639c.  Id. § 1640(e).  A consumer may also assert, as a defense to a foreclosure action, a violation of § 1639c "without regard for the time limit" in § 1640(e).  Id. § 1640(k).  Defendants

counter that the TILA claims are time-barred because Pitts's loan closing occurred on January 8, 2007, and McKoy's on October 11, 2006.  Defs.' Mot. Dismiss 13.

Because Plaintiffs assert TILA violations as affirmative claims, rather than defenses to foreclosure, § 1640(k) does not allow them to assert those violations without regard to time limit. But whether the applicable limitations period is one year or three years, Pitts and McKoy have not named the loan originators as defendants, and they allege no facts supporting *Defendant Wells Fargo's* liability for the alleged TILA violations by the loan originators.  The Court will therefore dismiss the two TILA claims directed against the loan originators.

Plaintiffs' remaining TILA claim—that Wells Fargo violated § 1641(g) by failing to disclose the identities of the current note holders—fails to state a claim for which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Pitts and McKoy mention this alleged violation only briefly and conclusorily, and the factual allegations they plead throughout the Complaint serve only to undermine this claim.

"Under TILA, an individual has a private cause of action against any creditor who violates 15 U.S.C. § 1641(g)'s disclosure requirements."  Vargas v. JP Morgan Chase Bank, N.A., 30 F. Supp. 3d 945, 949–50 (C.D. Cal. 2014) (citing 15 U.S.C. § 1640(a)).  Section 1641(g) requires a "creditor that is the new owner or assignee of the debt [to] notify the borrower in writing of such transfer, including the . . . identity . . . of the new creditor," "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned."  15 U.S.C. § 1641(g).  Courts have held that this disclosure obligation of new owners and assignees does not apply to "mere servicers" of loans.  Vargas v. J.P. Morgan Chase Bank, N.A., No. 5:14-cv-00859, 2014 WL 3435628 (C.D. Cal. July 11, 2014) (citing Gale v. First Franklin Loan Servs., 701 F.3d 1240 (9th Cir. 2012)).  Rather, § 1641 "address[es] entities who are *purchasers*

*or assignees* of mortgages," <u>Gale</u>, 701 F.3d at 1244–45 (citing § 1641(a)–(d)(1)), because

"Congress did not intend that all servicers who owned loans would be liable as assignees," <u>id.</u> at

1245.  For support, the court in <u>Gale</u> points to the House Report for the TILA amendments,

which explained:

> A number of recent consumer lawsuits against mortgage loan servicers have
> claimed the servicer is an assignee of the creditor who made the loan and is
> therefore liable. . . . [Section 1641(f)] clarifies that the loan servicer (the entity
> collecting payments from the consumer and otherwise administering the loan) is
> not an "assignee" under the TILA unless the servicer is the owner of the loan
> obligation.

<u>Gale</u>, 701 F.3d at 1245 (quoting H.R. Rep. No. 104–193, at 99 (1995)).

Pitts and McKoy allege only that Wells Fargo is a servicer of their loans, as discovered

through a securitization and forensic audit they had performed.  <u>See</u> Compl. ¶ 17 (explaining that

the audit showed that Pitts's loan originator "transferred and conveyed the servicing rights in the

Deed of Trust and Promissory Note to FEDERAL HOME MORTGAGE LOAN

CORPORATION [FREDDIE MAC] . . . as the Sponsor/Seller, FEDERAL RESERVE BANK

OF NEW YORK . . . as DEPOSITOR, Federal Home Mortgage Loan Corporation . . . [as]

TRUSTEE, Freddie Mac Multiclass Certificates, REMIC Series 3271 as the ISSUING ENTITY,

*Wells Fargo Bank, N.A. . . . AS THE MASTER SERVICER, and SECURITIES*

*ADMINISTRATOR*, [and] US Bank National Association . . . AS THE CUSTODIAN" (emphasis

added)).  Moreover, the thrust of their Complaint is that Wells Fargo does *not* have an

enforceable interest in the notes on their mortgages.  <u>See, e.g.</u>, Compl. ¶¶ 2, 3, 9, 11, 23, 25, 26,

37.  Though Plaintiffs include in their submissions a copy of Pitts's note with an indorsement to

Wells Fargo, they point out that the indorsement "does not make any mention of the status of

[Wells Fargo]" vis-à-vis Pitts's note.  Compl. ¶ 13.

9

In addition to concluding that § 1641(g) applies only to owners and assignees, courts have required that, to withstand a motion to dismiss a claim under § 1641(g), plaintiffs allege that defendant banks were creditors subject to the subsection and that they had that status during a particular and relevant time period.  See Foley v. Wells Fargo Bank, N.A., 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) (finding that a § 1641(g) claim survived a motion to dismiss where the plaintiff alleged "that, at all relevant times, [the defendant bank] was and is the creditor of the subject note and mortgage"); Derusseau v. Bank of America, N.A., No. 11-cv-1766, 2012 WL 1059928, *4 (S.D. Cal. Mar. 28, 2012) (finding that a plaintiff failed to state a claim under § 1641(g) and noting that "to state a cognizable claim [under that subsection], Plaintiff must allege *when* her loan was transferred" to the entity she claims violated the subsection).

Pitts and McKoy do not allege that Wells Fargo was the creditor for their loans; indeed, they maintain the opposite.  And they do not specify a date, or even a timeframe, when the transfer they allege to have triggered § 1641(g)'s requirements took place.  Because of these deficiencies, as well as their insistence that Wells Fargo is merely a servicer of their loans without any enforceable interest, they have failed to state a claim under § 1641(g).  The Court will therefore dismiss this claim.

### 3.      Common Law Claims

In Counts II and III, Pitts and McKoy argue that their loan originators breached their fiduciary duties by failing to secure for Plaintiffs more favorable loan terms, Compl. ¶¶ 58–75, and committed common law fraud by falsely representing that the loan terms were favorable, in order to deceive Plaintiffs into taking out the loans, Compl. ¶¶ 76–87.  In their opposition to the Defendants' motion to dismiss—which the Court considers in light of the D.C. Circuit's decision in Brown, 789 F.3d 146—Plaintiffs argue that Wells Fargo's failure to disclose the identities of

the current note holders, allegedly in violation of 15 U.S.C. § 1641(g), also constitutes a breach of fiduciary duty and common law fraud. Pls.' Am. Opp'n Defs.' Mot. Dismiss 13. Defendants contend that these state law claims against the loan originators must be dismissed as barred by the applicable statute of limitations, and they argue that Plaintiffs have failed to allege that Wells Fargo owes them a fiduciary duty.

As with respect to their TILA claims, Pitts and McKoy have not named the loan originators as defendants, and they allege no facts supporting Defendants' liability for the alleged wrongs by the loan originators. The Court will therefore dismiss the claims in Counts II and III.

As to their claims that Wells Fargo breached a fiduciary duty and committed common law fraud by violating § 1641(g), Pitts and McKoy have failed to state a claim. Because venue would be proper in the District of Maryland, the Court analyzes these claims under Maryland state law. "It is pellucid that, in Maryland, the relationship of a bank to its customer in a loan transaction . . . is not fiduciary in nature . . . in the absence of special circumstances or provisions in the loan agreement." Yousef v. Trustbank Sav., F.S.B., 81 Md. App. 527, 536–37 (1990) (citations omitted) (citing Univ. Nat'l Bank v. Wolfe, 279 Md. 512, 514 (1977); Suburban Trust Co. v. Waller, 44 Md. App. 335, 339 (1979)). Pitts and McKoy have not alleged that any special circumstances exist to overcome the presumption that their relationship with Wells Fargo is not fiduciary in nature. Nor do they cite a loan agreement purporting to govern the relationship or any provisions therein that might overcome that presumption. They have therefore failed to state a breach of fiduciary duty claim as to Wells Fargo.

To prevail on a claim of common law fraud against a bank under Maryland law, a plaintiff must establish:

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless

11

indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it[;] and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

Mbakpuo v. Civil Wells Fargo Bank, N.A., No. RWT-13-2213, 2015 WL 4485504, *3 (D. Md. July 21, 2015).  Pitts and McKoy allege only that Wells Fargo failed to make a disclosure required by federal law.  They do not allege any of the elements of common law fraud.  They have therefore failed to state a common law fraud claim as to Wells Fargo.

### 4.    Presenting Claims as Relators

Finally, Pitts and McKoy purport to bring their claims as *qui tam* relators on behalf of the United States.  Yet they have failed to follow the proper statutory procedures for doing so.  A relator must serve the government with a copy of the complaint and all material evidence *in camera*, under seal.  31 U.S.C. § 3730(b)(2).  The complaint must "remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."  Id.  And the relator must be represented by counsel.  McCain v. Bank of America, 13 F. Supp. 3d 45, 57 (D.D.C. 2014).  Because the "the real party in interest in such a case is the United States," the need for adequate legal representation of the government's claims is essential.  U.S. ex rel. Fisher v. Network Software Assocs., 377 F. Supp. 2d 195, 196 (D.D.C. 2005).  Plaintiffs are proceeding *pro se* and did not serve the complaint first on the government under seal.  Thus they cannot present their claims as relators.

## IV.    Conclusion

For the reasons stated above, the Court will grant Defendants' motion to dismiss.  An Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   September 29, 2015